UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SCOTT HARRISON,<br><br>         Plaintiff,<br><br>v.<br><br>EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS,<br><br>         Defendant. | Case No.: 16-CV-1310 JLS (BGS)<br><br>**ORDER GRANTING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 21) |

    Presently before the Court is Defendant Executive Office for United States Attorneys' Renewed Motion for Summary Judgment. ("Renewed MSJ," ECF No. 21.) Also before the Court are Plaintiff David Scott Harrison's Response in Opposition to Defendant's Renewed MSJ, ("Renewed MSJ Opp'n," ECF No. 23), and Defendant's Reply in Support of its Renewed MSJ, ("Renewed MSJ Reply," ECF No. 24). The Court vacated the hearing on the matter and took it under submission pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 25.) After considering the parties' arguments and the law, the Court **GRANTS** Defendant's Renewed Motion for Summary Judgment.

/ / /

/ / /

/ / /

# BACKGROUND

Plaintiff filed suit against Defendant for improper withholding of public documents, records, and writings pursuant to the Freedom of Information Act ("FOIA").[1] (*See generally* Compl., ECF No. 1.) On February 10, 2015, Plaintiff wrote a letter to Judge Larry A. Burns. (*Id.* ¶ 3, Ex. A.) The letter addressed Plaintiff's belief that his federal conviction was invalid, and Plaintiff sent a copy of this letter to the Office of the United States Attorney, Southern District of California, San Diego County Office. (*Id.*) On March 10, 2015, Assistant United States Attorney ("AUSA") Michael G. Wheat responded to the letter, noting that Plaintiff's letter to Judge Burns served "no legitimate purpose" and that Plaintiff has a long "history of engaging in various forms of harassing and threatening communications." (*Id.* Ex. B.) Wheat concluded the letter by stating that he was "sending a copy of [Plaintiff's] letter and this response to the appropriate investigative agencies so that they are aware of, and can monitor your activities." (*Id.* ¶ 4, Ex. B.) Plaintiff responded to Mr. Wheat's letter by asserting that he would file a FOIA request "concerning acts you claim in your letter to have taken against me" and that he would contact United States Attorney Laura E. Duffy concerning the same. (*Id.* ¶ 5, Exs. C, D.) Plaintiff filed his FOIA request with Duffy, requesting four categories of records. (*Id.* ¶ 6, Ex. E.) Specifically, Plaintiff requested

> all records, documents, information, writings, and tangible things, including electronically stored and/or transmitted:
>
> 1. that identify each and every one of the "appropriate investigative agencies" suggested in the March 10, 2015, letter; provide also street addresses;
>
> 2. that identify each and every other agency that was provided information about me due to my letter of February 10, 2015

---

[1] 5 U.S.C. § 552 *et seq.*

        (copy attached), as addressed to Judge, Larry A. Burns; provide also street addresses;

   3. that identify each and every law enforcement agent, non-law enforcement and other persons, department/agency employees, heads, functionaries, office holders, officials, public servants, and all other persons and citizens, to whom were sent information, at the identified agencies (see, #1 and #2, above) and to any other location; identify also, the agency and location each identified individual is attached to; provide also the street address for each identified individual; and

   4. from November 14, 1988 through March 10, 2015, provide copies of all "harassing and threatening communications, . . . vexing, harassing, or threatening letters[]" suggested by the March 10, 2015, letter that I have ever sent. Identify in each communication and/or letter the offending part, and identify to whom, and the address sent to, of any communication and/or letter I am accused of sending.

(*Id.* Ex. E.[2])

On March 30, 2015, Plaintiff was notified that his FOIA request had been rerouted to the Freedom of Information/Privacy Act Unit at the Executive Office for United States Attorneys ("EOUSA") in Washington, D.C. (*Id.* ¶ 7, Ex. F.)

On April 9, 2015, the EOUSA rejected Plaintiff's FOIA request, finding that "[t]he Freedom of Information Act only applies to records already in existence and does not require an agency to conduct research, create new records, or answer questions presented as FOIA requests." (*Id.* ¶ 8, Ex. G.) Plaintiff appealed the denial of his FOIA request to the Director, Office of Information Policy on April 16, 2015. (*Id.* ¶ 9, Ex. H.) On August 31, 2015, the Office of Information Policy affirmed, on partly modified grounds, the denial.

---

[2] As Defendant notes, Plaintiff "abandoned request number 4 in correspondence with EOUSA." (Renewed MSJ 6 n.2 (citing Compl. Ex. M, at 2).) Thus, Defendant did not search for responsive documents for request number 4. (*Id.*)

3

16-CV-1310 JLS (BGS)

(*Id.* ¶ 10, Ex. I.) The letter suggested contacting the Office of Government Information Services ("OGIS") for mediation services to resolve FOIA disputes as a non-exclusive alternative to litigation. (*Id.*) On September 16, 2015, Plaintiff wrote to the OGIS for help resolving the dispute. (*Id.* ¶ 10, Ex. J.) But on October 7, 2015, Plaintiff received a letter from the EOUSA notifying him of its receipt of his "Freedom of Information Act/-Privacy Act request dated September 16, 2015." (*Id.* ¶ 12, Ex. K.) And on October 8, 2015, the OGIS notified Plaintiff of receiving his request for mediation services. (*Id.* ¶ 13, Ex. L.) On October 30, 2015, Plaintiff notified the OGIS that the EOUSA was processing the FOIA request, and thus Plaintiff no longer needed mediation services. (*Id.* ¶ 15, Ex. N.)

On November 16, 2015, the EOUSA informed Plaintiff that "[a] search for records located in the United States Attorney's Office(s) for the <u>Southern District of California</u> has revealed no responsive records regarding the above subject." (*Id.* ¶ 16, Ex. O (emphasis in original).) Plaintiff appealed this decision on November 21, 2015. (*Id.* ¶ 17, Ex. P.) The Office of Information Policy affirmed the denial of Plaintiff's FOIA request on January 6, 2016, and again offered mediation services through the OGIS. (*Id.* ¶ 18, Ex. Q.) On January 15, 2016, Plaintiff again sought mediation services through the OGIS. (*Id.* ¶ 19, Ex. R.) And on April 14, 2016, the OGIS informed Plaintiff that the "EOUSA confirmed the field office completed a search and determined there were not responsive records." (*Id.* ¶ 20, Ex. S.)

Plaintiff filed this FOIA case against Defendant on May 31, 2016. (ECF No. 1.) Defendant answered on September 28, 2016. (ECF No. 8.) Defendant filed its original MSJ on November 3, 2016. (ECF No. 11.) On March 30, 2017, the Court denied Defendant's original MSJ on the grounds that Defendant failed to conduct an adequate search in response to Plaintiff's FOIA requests. (*See generally* "MSJ Order," ECF No. 20.) Specifically, the Court found inadequate (1) a single phone call to the <u>target</u> of the FOIA request asking for responsive documents and (2) a conclusory statement that there were no other searches that could possibly yield responsive documents. (*Id.*)

///

Defendant filed its Renewed MSJ on April 28, 2017, attaching a declaration in support of its argument that it has conducted an adequate search. (ECF No. 21.) The Court now considers this Renewed MSJ and the supporting evidence.

# LEGAL STANDARD

## I. Summary Judgment

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense. Summary judgment is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact. *Id.* When a party seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586 (1986). Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

**II.     Summary Judgment in FOIA Cases**

"The Freedom of Information Act was enacted to facilitate public access to Government documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). The purpose of the Act is "'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *Id.* (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). "Consistently with this purpose, as well as the plain language of the Act, the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *Id.*

Courts faced with a motion for summary judgment in a FOIA case generally must conduct a two-step inquiry. *Berman v. CIA*, 501 F.3d 1136, 1139 (9th Cir. 2007). The first step assesses whether the agency involved met its investigative obligations under FOIA. *Zemansky v. U.S. EPA*, 767 F.2d 569, 571 (9th Cir. 1985). An agency can prove that it met its obligations by showing that it conducted a search "reasonably calculated" to uncover all relevant documents requested under FOIA. *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 770 (9th Cir. 2015). "An agency can demonstrate the adequacy of its search through reasonably detailed, nonconclusory affidavits submitted in good faith." *Id.* (internal quotation marks omitted). "Affidavits submitted by an agency to demonstrate the adequacy of its response are presumed to be in good faith." *Id.* (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). "In evaluating the adequacy of the search, the issue 'is not whether there might exist any other documents possibly responsive to the request, but rather whether the <u>search</u> for those documents was <u>adequate</u>.'" *Id.* (emphasis in original) (quoting *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 987 (9th Cir. 2009)).

The second step requires the court to consider whether the agency has adequately demonstrated that any information not disclosed to the FOIA requester is protected by at least one of the enumerated exemptions. *Id.* at 769.

"Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved." *Nat'l Res. Def. Council v. U.S. Dep't of Def.*, 388 F. Supp. 2d 1086, 1094 (C.D. Cal. 2005) (quotations omitted). "In order to prevail on summary judgment, the agency must prove 'it has fully discharged [its burdens] under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" *Id.* (quoting *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985)). "Courts are permitted to rule on summary judgment in FOIA cases solely on the basis of government affidavits describing the documents sought." *Lion Raisins v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004), *abrogated on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016). "[I]f there are genuine issues of material fact in a FOIA case, the district court should proceed to a bench trial or adversary hearing. Resolution of factual disputes should be through the usual crucible of bench trial or hearing, with evidence subject to scrutiny and witnesses subject to cross-examination. The district court must issue findings of fact and conclusions of law." *Animal Legal Def. Fund*, 836 F.3d at 990 (citation omitted).

## ANALYSIS

In light of the Court's previous Order, Defendant conducted additional search efforts that it now contends are adequate. (Renewed MSJ 7 (citing Supp. Decl. of Katherine L. Parker ("Supp. Parker Decl."), ECF No. 21-2).) Defendant's search efforts did not yield any responsive documents. (*Id.*) Thus, Defendant argues that summary judgment should be granted in its favor. (*Id.*)

This time the Court agrees. Ms. Parker, the AUSA with primary responsibility for handling this FOIA litigation, (Supp. Parker Decl. ¶ 1), explains her additional efforts as follows:

10. Following the Court's March 30, 2017 Order, I engaged in additional efforts to determine whether my office maintains any records responsive to Plaintiff David Scott Harrison's FOIA request.

11. For example, on April 11, 2017, I met with AUSA Michael Wheat in my office. Mr. Wheat and I discussed Mr. Harrison's FOIA request, to discuss what additional searches might yield responsive documents.

12. During my April 11, 2017 conversation with Mr. Wheat, I inquired whether Mr. Wheat had forwarded Mr. Harrison's letter to any other employees of the U.S. Attorney's Office. He stated that he had not. I therefore determined that reaching out to other employees of my office would not be likely to yield responsive documents. Nevertheless, on April 24, 2017, I emailed every employee of the U.S. Attorney's Office, asking if anyone had or was aware of communications between the USAO and investigative agencies regarding David Scott Harrison from February 2015 to the present. I received only two responses, both from individuals who do not have any responsive documents. A true and correct copy of my office-wide email is attached to this declaration as Exhibit A.

13. During my April 11, 2017 conversation with Mr. Wheat, I also inquired whether he had opened a case file related to Harrison's February 10, 2015 letter to Judge Burns, or his own March 10, 2015 letter to Harrison. He told me that he had not. Nevertheless, in an abundance of caution, I coordinated a search for responsive documents in my office's case files. Case files in the U.S. Attorney's Office are tracked in a database called LIONS. Each case is given a USAO case number, which is different from the Court's case numbering system. The USAO case number begins with the four-digit year in which the case file was opened, and the USAO number contains the letter "V" for civil cases and the letter "R" for criminal cases. Case files are searchable by the name of an individual who is the plaintiff, defendant, or target.

14. On April 24, 2017, I requested that Sr. Docket Specialist Mary Wiggins search the entire LIONS database using Plaintiff's

8

name. She then explained to me that she had conducted that search using the first name "David" and last name "Harrison," and there were 10 responsive files. Reviewing the list of files, I determined that most of them related to previous civil suits that Mr. Harrison had filed against federal employees and agencies. Ms. Wiggins, who maintains all case files in the U.S. Attorney's Office civil division, explained to me that only two files that mention Mr. Harrison's name are still physically located in the USAO (the rest were previously closed and sent to the federal records center). One is case file 2015V00121, the file that was opened when my office received Mr. Harrison's 2015 FOIA request. I reviewed the entire contents of that file, and it does not contain any responsive records, rather, it contains records related to the FOIA request itself, and the processing of that FOIA request. The other case file maintained in the civil division is the case file pertaining to this FOIA litigation, USAO number 2016V00425 (Dist. Ct. Number 16-cv-1310). I reviewed the entire contents of that file, and it does not contain any responsive records. Rather, it contains copies of the court's docket entries in this case.

15. The only criminal case files that contain Plaintiff's name are the district court and appeals files related to District Court case no. 88-cr-0200. Ms. Wiggins informed me that, according to the LIONS system, the criminal file had been closed in 2003. Nevertheless, on April 24, 2017, I asked Ernesto Magana, Jr., Records Management Specialist in the criminal division, whether any records related to David Scott Harrison are maintained in the USAO criminal division. Three hours later, Mr. Magana informed me that after conducting a thorough search of the criminal division's files and file storage room, he determined that these closed files are no longer physically located at the USAO.

16. Also during my April 11, 201[7] meeting with Mr. Wheat, he volunteered to search his emails and electronic files for records regarding Mr. Harrison. In a follow up conversation on April 24, 2017, Mr. Wheat informed me that he had searched all of his emails and all of his electronically stored folders using the name "Harrison" and did not locate any records responsive to Mr. Harrison's FOIA request.

> 17. Also on April 24, 2017, I asked Mr. Wheat whether his legal assistant maintains all of his correspondence and he stated that she does. He said that she likely could perform additional searches for records, and that his legal assistant is Jenna Ruiz de Chavez. On April 26, 2017, I spoke with Ms. Ruiz de Chavez on the phone. She told me she has been Mr. Wheat's legal assistant for four years. She told me that she maintains an electronic folder on a network drive for each of her attorneys, and that each attorney folder has subfolders such as "correspondence" and "pleadings." While I was on the phone with Ms. Chavez, she explained to me that she was searching Mr. Wheat's correspondence subfolder for "Harrison," and that search did not yield any results. She then explained that she was searching all of Mr. Wheat's subfolders for "Harrison," and that search did not yield any results.
>
> 18. None of the search efforts described above yielded any records responsive to Mr. Harrison's FOIA request.

(Supp. Parker Decl. ¶¶ 10–18.)

Based on these additional search efforts, the Court concludes that Defendant has met its investigative obligations under FOIA. For one, these searches were reasonably calculated to locate responsive documents. *See, e.g.*, *Hamdan*, 797 F.3d at 771 (concluding that the FBI's search was reasonably calculated to locate responsive records where it searched relevant databases even though plaintiff claimed more could have been done). Specifically, Defendant went far beyond its original search efforts (consisting of a single phone call), and (1) conversed with Mr. Wheat several more times; (2) sent an office-wide email to all employees of the U.S. Attorney's Office seeking responsive records; (3) searched the U.S. Attorney's Office case file system and reviewed the files containing Mr. Harrison's name; (4) searched Mr. Wheat's electronic files and emails; and (5) searched Mr. Wheat's legal assistant's electronic files. (Renewed MSJ 7.)

In addition, Plaintiff has not offered, and the Court cannot find, any reason to doubt the good faith of Ms. Parker's declaration that despite all of these search efforts no

responsive records were found. *See, e.g.*, *Hamdan*, 797 F.3d at 771 (concluding that the State Department's search was adequate where, among other things, the court found "no reason to doubt the good faith of the Department's declaration that there [was] no apparent connection between [plaintiff] and the military matters within the Bureau's purview"). While Plaintiff argues that these records *might* exist because Mr. Wheat is otherwise trying to cover up his actions,³ (*see generally* Renewed MSJ Opp'n), his "[s]peculative claims about the existence of additional documents are insufficient to rebut the presumption of good faith" to which Ms. Parker's declarations are entitled. *See Freedom of the Press Found. v. U.S. Dep't of Justice*, — F. Supp. 3d —, No. 15-CV-03503-HSG, 2017 WL 952885, at *4 (N.D. Cal. Mar. 13, 2017) (quoting *Coleman v. Drug Enforcement Admin.*, 134 F. Supp. 3d 294, 301 (D.D.C. 2015)); *see also Lahr*, 569 F.3d at 987–88 (concluding that an agency had conducted an adequate search in response to a FOIA request after finding that there was "no evidence of either agency's bad faith in conducting their searches, and [that], aside from his general allegations of government cover-up, [plaintiff] presents no evidence [to the contrary]").

Nor does it matter that this search produced no responsive documents since "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Coleman*, 134 F. Supp. 3d at 303 (citing *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)); *see also D'Angelica v. IRS*, No. Civ. S-9401998 WBS/GGH, 1996 U.S. Dist. LEXIS 6681 (E.D. Cal. Apr. 25, 1996) (granting summary judgment where no responsive

---

³ Specifically, Plaintiff muses that

> [i]f, as Mr. Wheat now prays this Court will believe, he did not follow through on his oppression and retaliation, then wouldn't he have notified Ms. Duffy, notified Plaintiff, and later have notified the Executive Office for United States Attorneys? Isn't that what a not guilty person would have done? Mr. Wheat took a different course; one might argue that course of action was to erase all evidence of his oppression and retaliation.

(Renewed MSJ Opp'n 6.)

documents existed).

In sum, under FOIA Plaintiff was "entitled to a reasonable search for records, not a perfect one. And a reasonable search is what [he] got." *Hamdan*, 797 F.3d at 772. Accordingly, Defendant has met its burden under FOIA and thus the Court **GRANTS** Defendant's Renewed Motion for Summary Judgment.

As before, Plaintiff argues that this case cannot be decided without discovery. (Renewed MSJ Opp'n 7.) The Court again disagrees. As previously explained above and in the Court's prior Order, "[c]ourts are permitted to rule on summary judgment in FOIA cases solely on the basis of government affidavits describing the documents sought." *Lion Raisins*, 354 F.3d at 1082. Moreover, "in [FOIA] cases courts may allow the government to move for summary judgment before the plaintiff conducts discovery." *Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008) (collecting cases). While discovery may be appropriate in some cases, *see, e.g.*, *id.* at 1135 (discussing possibility of discovery for violation of a separate act by improperly accessing a personnel file), Plaintiff fails to demonstrate that discovery is appropriate in this case. Specifically, Plaintiff argues that discovery is necessary to assess "Mr. Wheat's conflicting and irreconcilable actions . . . and his later self-serving statements that he did not follow through on his earlier oppression and retaliation against Plaintiff." (Renewed MSJ Opp'n 7.) In other words, Plaintiff seeks to discover whom Mr. Wheat contacted regarding Plaintiff's letter. But this is exactly what Plaintiff unsuccessfully sought in his three FOIA requests. Thus, Plaintiff fails to convince the Court that discovery is appropriate, much less necessary, in this case. *Cf. Lane*, 523 F.3d at 1135 ("[T]his circuit has affirmed denials of discovery where, as here, the plaintiff's requests consisted of 'precisely what defendants maintain is exempt from disclosure to plaintiff pursuant to the FOIA.'" (quoting *Pollard v. FBI*, 705 F.2d 1151, 1154 (9th Cir. 1983))).

At core, it seems that Plaintiff wants this Court to determine <u>why</u> Mr. Wheat first stated that he was sending Plaintiff's letter to various investigative agencies, and then apparently did not actually send the letter to those agencies. (*See generally* Renewed MSJ

1 Opp'n.) But, as Defendant correctly explains, there is no basis under FOIA for the Court to reach that issue. (Renewed MSJ Reply 3.) Rather, the Court's jurisdiction is limited to determining whether the agency has (1) improperly (2) withheld (3) agency records. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) (citing 5 U.S.C. § 552(a)(4)(B)). Once Defendant has demonstrated an adequate search for responsive documents and has found none, it has met its burden and summary judgment is appropriate. *See, e.g.*, *Zemansky*, 767 F.2d at 574 (noting that agencies do not have an obligation to respond to questions posed as FOIA requests, and that the district court "properly limited itself to a determination of the responsibilities of the EPA under the FOIA").

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Renewed Motion for Summary Judgment (ECF No. 21). This Order ends the litigation in this matter. The Clerk of Court **SHALL** close the file.

**IT IS SO ORDERED.**

Dated: July 6, 2017

*[signature]*
Hon. Janis L. Sammartino
United States District Judge